MANUEL DEL RÍO-TORRES ET AL., Plaintiffs and Appellants, *v.* HEIRS OF RAFAEL A. CANCEL ET AL., Defendants and Appellees.

No. 3707. Argued November 27, 1926.—Decided March 29, 1927.

*V. Polanco de Jesús* for the plaintiffs. *Besosa & Besosa* for the appellees.

Mr. Justice Aldrey delivered the opinion of the court.

The Appellants, plaintiffs in the lower court as heirs of Manuel del Río Balbín, contracted with notary public Rafael A. Cancel for the work of inventorying, liquidating, partitioning and allotting the properties inherited from the father of the plaintiffs. He agreed to draft a public deed to that effect and pay the expenses for recording it in the registry of property, for all of which he was to be paid the sum of $2,000. The notary drew up the deed of partition and allotment of the properties and it was signed by the heirs on the 10th of April, 1922, as No. 33 of his protocol. But the notary never affixed his signature, mark, paraph and seal to the deed, although he endorsed on a certified copy thereof issued by him on the same day that it was signed, marked and sealed by him, and on the strength of that copy records were made in the registry of the portions allotted to the heirs. The notary died on the 3rd of October of that year and information having come shortly thereafter to the aforesaid heirs that the original deed was not signed, marked and sealed by notary Cancel, they engaged another notary who drafted a deed of partition and allotment of the properties.

Thereupon the aforesaid heirs brought suit against the heirs of notary Cancel, consisting of his widow and five minor children, and against The National Surety Company, a corporation of the State of New York which furnished the notarial bond for Cancel. That bond was in effect when the deed was executed, when the notary died and when the complaint was filed to recover jointly and severally from the

defendants the sum of $650.50 as damages caused by the omission of notary Cancel to sign, mark and paraph the deed of April, 1922. The defendants opposed the suit and the case was tried on the sole evidence of the plaintiffs, as defendants stated that they had no evidence, judgment being rendered dismissing the complaint with costs.

Sections 9 and 20 of the Notarial Act (Comp. 1911, sections 1987 and 1998) provide that a notarial deed drawn up by a notary and signed by the parties and witnesses thereto must be authenticated by the notary before whom it is executed with his signature, mark and seal, and that public instruments which do not comply with that requisite are null and void. Therefore, by express mandate of the law the deed executed by the plaintiffs on the 10th of April, 1922, numbered 33, before notary Rafael A. Cancel is void because it has not been signed, marked and paraphed by the said notary; and as a void document can not produce legal effects, the records made by virtue of the said deed in the registry of property from a certified copy of a deed apparently valid, are likewise void. It was so held in the case of *Fragoso* v. *Marxuach*, 31 P.R.R. 187. Therefore, as the original deed of partition and also the records of the allotments made therein are void, the plaintiffs had no valid title to them and in order to secure this they had to execute a new deed. They did so on the 1st of November of the same year. The expenses thereof and those required for the new records are damages suffered by the plaintiffs owing to the omission by notary Cancel to perform the duty imposed on him by law of signing, marking and paraphing the original deeds executed before him.

Are the defendants liable for the damages sued for?

We shall examine this question first as regards the heirs of notary Cancel.

Section 1803 of the Civil Code provides that a person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the

damage so done; therefore there can be no doubt that notary Cancel would be liable under the above statute for the damage caused to the parties thereto by his negligent omission to sign the deed. That liability descends to his heirs, because a man never dies with respect to his civil rights and obligations which are not personal but are transmitted to his heirs, as provided by section 664c of the Civil Code. Hence the heirs of notary Cancel are liable for the civil obligation of their ancestor to compensate the plaintiffs for the damage caused them by the negligent omission to perform a legal duty. They are not exempted therefrom by the fact that it had not been shown that they had accepted the inheritance or that they had inherited property from their ancestor. As was held in the case of *Amy* v. *Aponte,* 29 P.R.R. 134, a plaintiff is bound only to plead the status of heir of the defendant because on the death of the ancestor the substitution of the latter by the heir or assign is simultaneous, and it is not necessary to show the acceptance because it is always presumed as a consequence of the succession, while the non-acceptance of the inheritance is an exception to be shown by the defendant. Therefore, the heirs of notary Cancel are liable for the claim set up against them.

Let us examine the question as regards the other defendant, The National Surety Company.

Section 2 of the Notarial Act, as amended by Act No. 15 of 1914, provides that every person admitted to practice as a notary shall give and maintain in full force, as long as he may be engaged in such practice, a bond in favor of The People of Porto Rico for the sum of $2,500 to answer for the faithful performance of the duties of his office; that such bond shall answer for any damage that may be caused by an act or omission by the notary in the performance of his duties, and that if in any judicial action against a notary the whole or part of his bond is adjudicated to the claimant, the former shall be disqualified to continue practicing until such time as he may again give bond for the said amount.

As a consequence of that obligation imposed by the law notary Rafael A. Cancel as principal and The National Surety Co. as surety signed a document by which they bound themselves jointly and severally to The People of Porto Rico for the sum of $2,500 to be paid to The People of Porto Rico, the condition thereof being that the said Cancel had been designated and appointed as notary public and that if he should truly and faithfully execute and discharge all the duties and trusts imposed upon him as such notary public according to law, and all rules, regulations and orders made pursuant to law, and should well and truly account for all revenues, fees, money and securities and property coming into his hands as such notary public from and after April 1st, 1920, and pay over the same in full to The People of Porto Rico, then that obligation would be void, otherwise it would be and remain in full force and effect.

. The purpose and object of. the security required by the law from notaries was, as stated therein, to answer for any damages caused by them in the exercise of their profession; therefore any person damaged by their acts or omissions in the performance of their duties as such have an action on the bond as compensation for the damages suffered, and the fact that the bond was executed in favor of The People of Porto Rico is not a bar to an action for damages on the bond, for The People of Porto Rico is only a nominal party in that bond in behalf of the unknown persons that might be injured and in whose benefit such bond was required. To contend that the bond answers only to The People of Porto Rico and not to any other injured party is not in harmony with the purpose for which it was required, namely, to answer to any person injured. In the case of *Lammon* v. *Feusier,* 111 U. S. 19, although the bond of a marshal was not given in favor of the injured party who brought the action or in favor of any particular person, but in favor of the government to compensate persons who might be injured by his conduct, it was held that the bond could be sued on by or for

the benefit of any other person. And though it could be argued that such decision rests on the fact that the law authorized any person to sue for any injury caused by said functionary and that there is no such authorization in our Notarial Act, we will say that in the later case of *Howard* v. *United States*, 184 U. S. 687, which only differs from the case at bar in that the latter deals with a notary while the former deals with a judicial officer, the Supreme Court of the United States said:

"But it is said that the bond in suit having been given to the United States, it must be deemed an instrument for the sole benefit of the Government, and therefore no suit can be maintained on it for the benefit of an individual suitor, although such suitor may have been damaged by the failure of the clerk to discharge his duty. This results, it is supposed, from the fact that there is no statute expressly authorizing such a suit. If this position be well taken, it would follow that the bonds required to be given by clerks of the Federal courts are not in any case for the protection of private suitors. We are of opinion that Congress never intended that any such condition of things should exist, but intended that the bond of a clerk should be for the protection of all suitors, public and private, and to that end authorized his bond to be increased to forty thousand dollars. It is impossible to suppose that, when requiring a clerk to give bond to the United States 'faithfully to discharge the duties of his office, and seasonably to record the decrees, judgments and determinations of the court,' Congress had in mind the interests of the United States alone, and purposely refrained from making any provision whatever for the security of private suitors in the Federal courts. Such a conclusion would be inconsistent with the practice of a century, and would greatly surprise the profession. As may well have been anticipated when those courts were first established, the great mass of litigation in the District and Circuit Courts of the United States has always been between individuals, and consequently, the words above quoted, it must be assumed, had reference to individual suitors as well as to the United States. In our opinion, the bond of the clerk is for the benefit of every suitor injured by the failure of that officer faithfully to discharge his duties or seasonably to record the decrees, judgments and determinations of the court."

Therefore, we come to the conclusion that the bond given

by The National Surety Co. answers to the claim of the plaintiffs.

In order to fix the sum to which the plaintiffs are entitled as compensation we must take into account that according to the notarial tariff the fees allowed to the notary by reason of the deed executed amount to $233.30, which is one-half of one percent on $46,660, the value of the inventoried property. Adding thereto $90.50, which according to the tariff will be the cost of the new records, there will result the sum of $323.80. Therefore, the judgment appealed from must be reversed and substituted by another sustaining the complaint and adjudging that the defendants pay jointly and severally to the plaintiffs the sum of $323.80, without special imposition of costs.